J-S02009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.M.M.B., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.M.M.B., A MINOR | : : : : : : | |
| | : | No. 821 EDA 2020 |

Appeal from the Dispositional Order Entered February 3, 2020
In the Court of Common Pleas of Monroe County Juvenile Division at
No(s): CP-45-JV-0000203-2019

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED JUNE 15, 2021**

Appellant, K.M.M.B., a minor, appeals from the juvenile court's February 3, 2020 dispositional order adjudicating him delinquent of two counts of terroristic threats (18 Pa.C.S. §§ 2706(a)(1) and 2706(a)(3)), possessing an instrument of crime (PIC) (18 Pa.C.S. § 907(a)), and disorderly conduct (18 Pa.C.S. § 5503(a)(4)). After determining that Appellant was in need of supervision, the court ordered him to serve a period of one-year probation, with conditions and counseling requirements. After careful review, we affirm the dispositional order.

Appellant was charged with the above-stated offenses based on comments he made on a messaging app, Snapchat, about committing a shooting and other violent acts at his school. The juvenile court explained that,

[a]n adjudication hearing was held November 27, 2019[,] at which time [Appellant] was found delinquent as to all charges. A diagnostic evaluation was ordered[,] which ultimately recommended placement at a residential facility. Following a dispositional hearing, [Appellant] was placed on probation with conditions and counseling. Post-disposition motions were denied and a timely appeal followed.

Juvenile Court Opinion (JCO), 10/16/20, at 1.

Appellant complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[1] After waiting for transcripts, which were delayed due to COVID-19, the court filed its Rule 1925(a) opinion on October 16, 2020. Herein, Appellant states three issues for our review:

_____

[1] We note that the court's Rule 1925(b) order was filed on March 3, 2020, and directed Appellant to file his concise statement within 21 days. Appellant's Rule 1925(b) statement was not filed until 28 days later, on March 31, 2020. However, on March 16, 2020, the Pennsylvania Supreme Court declared a general, statewide judicial emergency because of the coronavirus that causes COVID-19. *In re: General Statewide Judicial Emergency*, 228 A.3d 1281 (Pa. filed Mar. 16, 2020) (*per curiam*). In a March 18, 2020 order, the Supreme Court generally suspended "all time calculations for purposes of time computation relevant to court cases or other judicial business, as well as time deadlines." *In re: General Statewide Judicial Emergency*, 228 A.3d 1283 (Pa. filed Mar. 18, 2020) (*per curiam*). As to the general suspension of time calculations and deadlines, on April 28, 2020, the Supreme Court ordered that "legal papers or pleadings (other than commencement of actions where statutes of limitations may be in issue) which are required to be filed between March 19, 2020, and May 8, 2020, generally shall be deemed to have been filed timely if they are filed by close of business on May 11, 2020." *In re: General Statewide Judicial Emergency*, 230 A.3d 1015 (Pa. filed Apr. 28, 2020) (*per curiam*) (emphasis omitted). Therefore, we consider Appellant's Rule 1925(b) statement, which was due on March 24, 2020, as being timely filed.

A. Whether the juvenile court erred and abused its discretion in adjudicating … Appellant delinquent[, as it was] against the weight of the evidence adduced at the adjudication hearing?

B. Whether the juvenile court erred and abused its discretion in adjudicating … Appellant delinquent where the evidence adduced at the adjudication hearing was insufficient to establish that [Appellant] had criminal intent to commit the crimes charged?

C. Whether the juvenile court erred and abused its discretion in adjudicating … Appellant delinquent where the evidence adduced at the adjudication hearing demonstrated that [Appellant's] comments were protected speech under the First Amendment of the United States Constitution and Article I [,] Section [7] of the Constitution of the Commonwealth of Pennsylvania?

Appellant's Brief at 4 (unnecessary capitalization omitted).

In his first issue, Appellant purports to challenge the weight of the evidence to support his adjudications of delinquency. However, his argument sounds in an attack on the sufficiency of the evidence, as he claims that the Commonwealth failed to prove the intent element for his adjudications of terroristic threats and PIC.[2] Thus, we review his argument under the following standard:

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. **Commonwealth v. Moreno**, 14 A.3d

_____

[2] Appellant only attacks his terroristic threats adjudication under 18 Pa.C.S. § 2706(a)(3); he makes no mention of his adjudication under section 2706(a)(1) (directly or indirectly threatening to commit any crime of violence with intent to terrorize another). In addition, he presents no developed argument concerning his disorderly conduct adjudication. Thus, any challenges to his section 2706(a)(1) or disorderly conduct adjudications are waived.

133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. ***Commonwealth v. Hartzell****,* 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. ***Moreno, supra*** at 136.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011).

We will initially address Appellant's attack on his terroristic threats adjudication. "A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to[] … cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience." 18 Pa.C.S. § 2706(a)(3). Here, Appellant insists that "he did not intend his comments to alarm other[s], or to cause significant disruption or public inconvenience." Appellant's Brief at 10. He contends that, instead, he was "purely venting frustration[,] had no idea that others would be affected by his vents, and had neither the means nor the intent to carry out any conduct in furtherance of his musings." ***Id.***

The evidence presented at the adjudicatory hearing, which the juvenile court "found relevant and believable[,]" does not support Appellant's argument. JCO at 1. The court summarized that evidence as follows:

> In November 2019, the Stroudsburg High School Principal, Jeffery Sodl, became aware of threats made on social media directed at the school/students. The information was provided through a tip to the "Safe 2 Say Something" initiative of the Attorney General's Office from a student who saw the social media posts on Snapchat. The information that had been posted, and provided by the tip, led school officials to believe it was posted by [Appellant]. The posts contained the following statements:

- 4 -

[]"I'm suffering from so much depression it's not even funny anymore."

[]"I despise people being happy because I am not."

[]"Like, I don't really have any friends and if I would to perhaps shoot the fucking school up right now I would be looked at as crazy, right? This is why I hate people in general."

[]"Nobody wants to really talk to me for some weird ass reason, people think I'm weird and I feel like slitting y'all [*sic*] throats, how bout [*sic*] that, would that be cool if I just do that?"

[]"I literally can't sleep at all because I keep thinking about how people keep acting funny to me, so someone has to pay the consequences for their actions, right?"

[Appellant] was called down to the principal's office, and he admitted to the principal, the head of school security, and a vice principal that he had made the posts. He was interviewed by the school resource officer[,] and [Appellant] also admitted to [the officer] that he authored the posts using his cellphone. The cellphone was confiscated, and the messages were admitted at [the] time of [the adjudicatory hearing]. [Appellant] told the principal that nobody listens to him, and he felt that this would get him attention. [Appellant] also admitted that he has thought of actually doing what he posted. The principal believed these were threats to the school and to the students there, and he was very concerned. The posts were sent directly to at least … six other students by Snapchat messaging, and approximately 48 people ended up viewing the posts. [Appellant's] phone also contained a picture with "Stroudsburg" at the bottom and in red letters on a slant across the page appeared: "I feel like inflicting pain on others for self-enjoyment." The school resource officer who filed the charges against [Appellant] testified that [Appellant] exhibited no emotion and had a blank stare during his interview. [Appellant] also made a written statement to the school resource officer. [Appellant] was 17 years old and in 11th grade at the time of the offense.

[Appellant] testified that he just wanted to release some stress by making the posts. He stated it was a way for him to vent his frustration and that it was not a true threat. He also testified that he was just trying to express himself. [Appellant] sent the posts

out on Snapchat at 4 or 5 in the morning, before school started that day. On cross[-]examination, [Appellant] said he was aware people could consider the posts as threats and alarming, especially in light of the shootings that have occurred at other schools. He also agreed that he knew students would be seeing the posts. [Appellant] said that the comments were just questions, and therefore, he didn't mean them. However, he seemed to agree that the language was rhetorical in nature and that he was not seeking a response to the questions he posed. [Appellant] also had a conversation with his friend who took screenshots of the comments, because it concerned him that his friend had done that. That friend … was the one who forwarded the comments to school administrators as noted above. On re-direct, [Appellant] said he wanted his friends on Snapchat to know a little bit of what was on his mind. The written statement of [Appellant] stated that he wanted to get people's attention by making the posts on Snapchat.

JCO at 1-3.

At the close of the adjudicatory hearing, the court explained why it was adjudicating Appellant delinquent of terroristic threats under section 2706(a)(3):

There [were] … messages here that really serve[d] no legitimate purpose, [and] certainly caused a public inconvenience. At least one individual was concerned enough for your safety and the safety of the public to report this. It was done with reckless disregard. You didn't necessarily think it was going to cause any problems, but a prudent, careful person reasonably would not send messages like that without thinking that it was going to create concern by others; either terror or inconvenience.

N.T. Hearing, 11/27/19, at 65-66.

We discern no error in the court's conclusion that the evidence proved that Appellant acted with at least reckless disregard in causing terror or serious public inconvenience to his fellow classmates and/or the administrative and security staff of the school. Appellant acknowledged during

his testimony that he knew other people — including students at his school — would see the at-issue Snapchat messages. *Id.* at 55-56. He admitted that he knew those messages could be considered as threats, and that they could cause alarm. *Id.* at 57, 58. Clearly, this evidence was sufficient to sustain Appellant's adjudication for terroristic threats.

Next, Appellant challenges his PIC adjudication. A person commits PIC "if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a). An "instrument of crime" is defined as, *inter alia*, "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S. § 907(d).

Here, aside from setting forth the definition of PIC, Appellant's entire argument as to why the evidence was insufficient to support his adjudication is as follows:

> [A]ppellant possessed only his cell phone, and posted a message on Snap[chat] … of fleeting thoughts of frustrations; not some concrete and pointedly articulated plan of criminal conduct. In the absence of any criminal intent, it cannot be said that … [A]ppellant did, or intended to, employ his telephone criminally. His adjudication of this charge, and the [d]isorderly conduct[, are] … unsupported by the evidence.

Appellant's Brief at 10.

Appellant's undeveloped argument is unconvincing. First, we will not address his challenge to his disorderly conduct adjudication, as Appellant only tacks on a mention of that offense to his PIC argument, and fails to even define the crime of disorderly conduct in his brief. In regard to his PIC

adjudication, we have concluded, for the reasons set forth *supra*, that the evidence proved Appellant acted with reckless disregard in posting threatening messages on Snapchat. Thus, he possessed the requisite criminal intent for terroristic threats, and he utilized his telephone to further his commission of that offense. Consequently, the evidence supports his adjudication of PIC.

Finally, Appellant claims that his at-issue Snapchat messages constituted speech protected by the United States and Pennsylvania Constitutions. He insists that, "where, as here, there is no clear proof of any intent to terrorize, there is no restriction on the right to express in writing[] one's thoughts, even if, as here, those thoughts are essentially a cry for help, by a despondent individual." *Id.* at 12. According to Appellant, "[t]he record demonstrates that [he] never comprehended that his venting would alarm others, and that he only wanted those with who[m] he communicated to know his thoughts[,] as he was struggling with a lack of acceptance." *Id.*

We agree with the Commonwealth that Appellant has waived this claim for our review. *See* Commonwealth's Brief at 13. Appellant does not point to where he raised his constitutional challenge before the trial court. It appears to this Court that it was presented for the first time in his Rule 1925(b) statement. Our Supreme Court has declared that, "[c]onstitutional claims are subject to waiver regardless of their importance." *Commonwealth v. Knox*, 190 A.3d 1146, 1153 n.5 (Pa. 2018) (citations omitted); *see also id.* at 1153 n.4 (concluding that Knox preserved his first amendment argument by raising it *at trial*, in his Rule 1925(b) statement, and before the Superior Court).

Because Appellant did not raise his constitutional claim before the trial court, we deem it waived on appeal. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Dispositional order affirmed.

Judge Nichols joins this memorandum.

Judge Kunselman files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/2021